ARTEMUS-JELLICO COAL CO. ET AL. V. DAVID E. ULLAND ET AL.

CONTRACT TO TAKE PROPORTION OF ALL NUT AND SLACK SCREENED NOT MUTUAL.

A contract for the sale of a certain proportion of all the nut and slack produced from the operation of a coal mine is not mutually binding on the parties and cannot be enforced, when by its terms it is left entirely optional with the sellers whether or not they will separate any or all of the nut and slack from the run of the mine.

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

**E. J. Dempsey** and **W. M. Fridman,** for plaintiff in error.

**Drausin Wulsin** and **Powell & Smiley,** for defendant in error.

**GIFFEN, J.**

The only error alleged in this case consists in sustaining the general demurrer to the amended petition and rendering judgment against the plaintiffs. The action was founded upon the breach by the defendants of the following contract, which is set out in the amended petition:

"Cincinnati, Ohio, May 12, 1903.

"This agreement entered into this day by and between the Artemus-Jellico Coal Co. and the Ross-Jellico Coal Co. of Kentucky, incorporations of the first part, and Laurel-Jellico Coal Co., composed of David E. Ulland and Wm. T. Ulland, of Cincinnati, O., of second part, witnesseth:

"Parties of first part have sold to parties of second part ninety (90) per cent of all the nut and slack made through 1¼ screen at their mines at Rossland and Artemus, Ky., for a term of ten (10) months commencing June 1, 1903, and continuing until April 1, 1904, at one ($1) dollar per ton f. o. b. cars at mines.

"Parties of the second part agree to take the amount of nut and slack as stated above, and agree to pay parties of first part one ($1) dollar per ton of 2,000 pounds f. o. b. cars at mines for same, paying on the tenth of each month for all coal shipped the previous month, and at any time said payments are not made promptly as agreed without consent to extend by first parties, this contract at the option of first parties shall terminate and be null and void.

"Second parties agree at all times to keep first parties supplied with shipping orders for said coal, so as not to delay the mining and

..oading of other coals, it being understood that the nut and slack must be moved in order to mine and load other grades of coal. It is understood that this contract does not bind first parties to mine any certain amount of nut and slack but includes 90 per cent of all nut and slack they do mine.

"ARTEMUS-JELLICO COAL CO.,

"ROSS-JELLICO COAL CO.,

"LAUREL-JELLICO COAL CO.,

"By DAVID E. ULLAND."

The averments contained in the amended petition are no broader than the language employed in the contract itself, and hence, the only question for consideration is whether the contract is mutually binding upon the parties.

The offer made by the plaintiffs in the second paragraph of the contract and accepted by the defendants was to sell and deliver 90 per cent of all the nut and slack made through a one and a quarter inch screen at their mines for a term of ten months thereafter at one dollar per ton f. o. b. cars at mines. This relates to nut and slack coal not then in existence, but which may be made in the future during the months named by running the coal from the mines over a one and a quarter inch screen, thereby producing the nut and slack which is to be delivered on the cars at mines at one dollar per ton, but it does not embrace a promise either express or implied, to make any nut and slack through a one and a quarter inch screen. It leaves it entirely optional with the plaintiffs to separate the nut and slack from the run of the mine and hence not enforcible against them. But counsel for plaintiffs in error say in their brief:

"It is a fact that the parties to this contract had had previous dealings, when the defendant in error knew the quality of the coal and the relative capacity of the mine, or rather the output of the mine, and the relative amount of nut and slack produced per month."

And rely upon the general doctrine that contracts should be construed in the light of circumstances surrounding the parties and the object which they evidently had in view. They cite the case of *Minnesota Lumber Co.* v. *Coal Co.* 160 Ill. 85 [43 N. E. Rep. 774; 31 L. R. A. 529]. But in that case it is expressly stated at page 93:

"The plea avers that defendant was engaged in the purchase, use and sale of coal in its business, and that its requirements therein for that season were very large, and that such fact was well known to the plaintiff."

Coal Co. v. Ulland.

In the case before us, the amended petition contains no averment concerning the knowledge of defendant in error relative to the output of the mine, and the amount of nut and slack produced per month, and it is elementary that the demurrer admits facts only which are well pleaded.

The last sentence in the contract, to wit: "It is understood that this contract does not bind first parties to mine any certain amount of nut or slack but includes 90 per cent of all nut and slack they do mine," only confirms the view that there was no obligation resting on the plaintiffs in error to make or to mine any nut and slack coal. If by the other terms of the contract a promise to deliver 90 per cent of all the nut and slack made through a one and one-quarter inch screen in the usual and ordinary operation of the mines were once established, then there would be no difficulty in construing this sentence to mean simply that the parties did not guarantee any certain amount of nut and slack, but only 90 per cent of all that may be produced in the usual and ordinary operation of the mines.

There was no error in sustaining the demurrer and the judgment will be affirmed.

**Jelke** and **Swing, JJ.,** concur.